[Civ. No. 1719.   First Appellate District.—April 27, 1916.]

MARTIN L. GATES, Appellant, v. GERTRUDE JULIA CUNNINGHAM, Administratrix, etc., Respondent.

HUSBAND AND WIFE—BANK DEPOSITS—PRESUMPTION OF COMMUNITY PROPERTY OVERCOME.—The presumption that money deposited by a wife in a savings bank during marriage is community property is overcome by evidence tending to show that the money was accumulated from the personal income of the wife's mother and brother, and that the wife merely handled it in her name as their agent or trustee.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order denying a new trial.   James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Stafford & Stafford, and W. P. Caubu, for Appellant.

Martin Uldall, for Respondent.

LENNON, P. J.—This is an appeal from a judgment entered in favor of the defendant, and from an order denying the plaintiff a new trial, in an action wherein the plaintiff sought to recover the sum of one thousand nine hundred dollars upon a rejected claim against the estate of George W. Rapp, deceased. The plaintiff's cause of action was rested primarily upon allegations of fact substantially as follows:

Martin L. Gates and Julia Gates were husband and wife. During their married life they accumulated by their joint efforts the sum of one thousand nine hundred dollars, which was community property. This money was deposited by the wife in the Savings Union Bank and Trust Company in the city of San Francisco, with the knowledge, consent, and approval of her husband. A short time prior to her death, viz., on June 21, 1914, the wife, without the knowledge or consent of her husband, gave to George Rapp, the deceased, an order upon the Savings Union Bank and Trust Company for the one thousand nine hundred dollars which she had on deposit there. Rapp presented the order to the bank; it was honored and the money withdrawn and deposited in the name of and to the credit of Rapp in the Humboldt Savings Bank. Thereafter, and until the time of his death, July 11, 1914, Rapp claimed to hold and own such sum as his individual property.

The defendant's answer denied all of the material allegations of the plaintiff's complaint save and except the allegation of the presentation and rejection of the claim against the estate of the deceased.

Upon the issues thus framed the cause was tried by the court without a jury, and its findings of fact were in substance and effect that Martin L. Gates and his wife, Julia Gates, did not, while living together as husband and wife, accumulate the sum of one thousand nine hundred dollars or any sum of money whatever, of which she, the wife, had control and which she deposited in the Savings Union Bank and Trust Company; that Julia Gates did not on the twenty-first day of June, 1914, give to George Rapp, the deceased, an order upon said bank or any other bank for the sum of one thousand nine hundred dollars, or any other sum, but that said Julia Gates did, on or about the twenty-ninth day of January, 1914, upon the death of Gertrude Rapp, the mother of Julia Gates and George Rapp, deceased, transfer an ac-

count in the sum of $2,062.21, which stood upon the books of the Savings Union and Trust Company in the joint names of Julia Gates and Gertrude Rapp, her mother, to the joint account of Julia Gates and George Rapp, deceased; that said sum of money so transferred was not nor was any part thereof the community property of Martin L. Gates and Julia Gates.

The only point presented in support of the appeal is that the findings of the court to the effect that the money in suit was not the community property of Gates and his wife, is contrary to the evidence.

The evidence upon this phase of the case is direct and circumstantial and is, in our opinion, in substantial conflict. The evidence adduced in support of the plaintiff's case tended to show in substance that Julia Gates, about January 5, 1900, and while she was the wife of the plaintiff, deposited the sum of ten dollars with the Savings Union Bank, now known as the Savings Union Bank and Trust Company; and from time to time thereafter added to her account several small deposits until April 21, 1901, when she had to her credit and in her name the sum of $121.13. On the last-mentioned date this account, which was entered as an "ordinary deposit," was transferred to a "term deposit account," and continued in her name until December 31, 1902, at which time it aggregated the sum of $209.81. On March 11, 1903, this account was transferred to Mrs. Gertrude Rapp (the mother of Julia Gates), and while standing in her name was, on March 26, 1903, increased by a single deposit of $250. On July 30, 1904, the balance of $180.68 remaining to the credit of the last-mentioned account was transferred to Julia Gates as a savings deposit account and numbered 92,003, which was the number originally assigned to the account of Julia Gates when she made her first deposit with the bank. This account stood in the name of Julia Gates until July 18, 1911, at which time it showed a balance in her favor of the sum of $1,776.89, as the result of numerous and frequent deposits ranging in amounts from ten dollars to one hundred dollars. On the last-mentioned date this account was again transferred from Julia Gates to "Julia Gates or Gertrude Rapp," and on and after December 31, 1911, was augmented by other deposits varying in amount from thirty-five dollars to one hundred dollars. On July 29, 1914, it aggregated the sum of

$2,062.21, when it was transferred to "Julia Gates or George Rapp."

It may be conceded, as counsel for the plaintiff contends, that the fact that the initial and subsequent deposits of money credited to the several accounts standing in the name of Julia Gates were made while she was the wife of the plaintiff, created the presumption that the money thus deposited was community property. This, however, was a disputable presumption, and was, we think, overcome by other evidence in the case, direct and circumstantial, which tended to show that neither the money in suit, nor any part thereof, was accumulated as the result of the joint earnings of the plaintiff and the deceased, but rather was accumulated from the personal income of Mrs. Gertrude Rapp and her son, the decedent, George Rapp, and that the deceased merely held and handled the same in her name as their agent and trustee. Thus there was much convincing evidence tending to show that the plaintiff was a man of intemperate habits, and as a consequence earned but little money during his married life, which was never at any time wholly sufficient to supply the community necessaries of husband and wife. True, the evidence shows that Julia Gates also contributed to the support of the community by working as a seamstress, but she secured such work only irregularly, and oftentimes, owing to frequent ill health, was unable for months to work at all, with the result that her average weekly earnings were from seven to nine dollars, which, it appears, when added to the intermittent earnings of the plaintiff, were no more than sufficient to provide for the daily needs of the community. This being so, it is improbable that Julia Gates could have saved any sum out of the community earnings, and it is highly improbable that she could have saved so large a sum as two thousand dollars. The money in suit, therefore, must have come from some source other than the joint or individual earnings of Gates and his wife.

This conclusion is fortified by the undisputed fact that the deceased was regarded by her mother, Mrs. Gertrude Rapp, as the business head of the Rapp family, and as such was intrusted with the family money, and that her mother upon several occasions gave her certain sums of money to be deposited in bank.

The foregoing is but a meager outline of the evidence adduced upon the whole case; but it will suffice, we think, to show that the presumption relied upon by the plaintiff was overcome by clear, certain, and convincing evidence within the meaning and character of such evidence as defined in the cases of *Lynam* v. *Vorwerk*, 13 Cal. App. 509, [110 Pac. 355], and *Freese* v. *Hibernia etc. Society*, 139 Cal. 392, [73 Pac. 172].

The judgment and order appealed from are affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on May 27, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 26, 1916.